**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

LEO BRANDON FARNSWORTH,

    Plaintiff,

v.                                        CIVIL ACTION NO.  2:17cv455

LAURA RAMLER,

    Defendant.

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Defendant Laura Ramler, by counsel, submits this Memorandum in Support of her Motion to Dismiss Pursuant to Rule 12(b)(6).

### Introduction

Plaintiff Leo Brandon Farnsworth ("Farnsworth" or "Plaintiff") an inmate in the custody of the Virginia Department of Corrections ("VDOC"), has filed an Amended Complaint (Dkt. No. 4) apparently alleging a violation of his constitutional rights. Farnsworth appears to take issue with a disciplinary charge issued against him and makes an allegation that Defendant Laura Ramler ("Ramler" or "Defendant") retaliated against him for appealing a disciplinary charge. First, Defendant submits that Farnsworth's Amended Complaint fails to state a claim entitling him to relief, and that the Amended Complaint should be dismissed. Second, Farnsworth's claims regarding the disciplinary procedure are barred. Finally, it is plain from the face of the Amended Complaint that Farnsworth failed to exhaust his administrative remedies before filing suit and his claims should be dismissed.

**Material Factual Allegations**

In his Amended Complaint, Farnsworth alleges the following facts:[1]

1. "On or about August 14, 2017, Laura A. Ramler denied the plaintiff a fair and impartial tribunnal [sic] when she denied him the evidence he needed to fight a charge that was written on him." Am. Compl. 4.[2]

2. "On or about September 6, 2017, Ms. Ramder had an institutional classification hearing held to change his class level (GCA-Good Time) to a Level 4 (0 for 30) and custody Class Level 3, because of retaliation for filing an appeal of his charge." Am. Compl. 4.

3. At the time of his submission of his Amended Complaint to this Court, Farnsworth had not completed the grievance procedure offered at his facility. Am. Compl. 3.

4. At the time of his submission of his Amended Complaint to this Court, Farnsworth's grievances were "still pending." Am. Compl. 3.

As a result of the foregoing, Farnsworth seeks $1,000,000 in damages and injunctive relief to stop a transfer. Am. Compl. 5.

**Legal Standard**

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a Rule 12(b)(6) motion to dismiss, the non-moving party's complaint must therefore allege facts that "state a claim to relief that is plausible

---

[1] For purposes of a motion to dismiss, the Court "accepts all well-pled facts as true and construes these facts in the light most favor able to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.2d 250, 255 (4th Cir. 2009). Defendant does not admit that the facts are as Plaintiff alleges them to be, but accepts his version of the facts for purposes of the motion to dismiss.

[2] Citations to Plaintiff's Amended Complaint are to the ECF-assigned page numbers on the document because citations to paragraph numbers would be confusing or impossible.

on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557). While a court should assume the veracity of well-pleaded factual allegations, conclusory statements are not sufficient. *Id.* at 663-64. Even when a plaintiff's facts are "well-pleaded," if those facts do not permit the court to infer more than the mere possibility of misconduct, "the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679. Moreover, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678. Rather, a plaintiff's legal conclusions must be supported by factual allegations that make the claim plausible. Finally, while a court must liberally construe a *pro se* civil rights pleading to avoid inequity, it is not required to act as a *pro se* litigant's advocate. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

    A. **Claims Regarding Farnsworth's Disciplinary Charge and Punishment Fail to State a Claim and are Barred**

In his Amended Complaint, Farnsworth never specifies what the problem was with his disciplinary charge and never alleges the violation of a specific constitutional right which he seeks to vindicate via his lawsuit. Defendant assumes that Farnsworth is attempting to make a claim alleging a violation of his Fourteenth Amendment rights to procedural due process during the prison disciplinary proceedings. However, even assuming this to be true, Farnsworth's allegations fail to state a claim and are barred.

3

### a. Farnsworth Fails to State a Claim

Farnsworth's Amended Complaint fails to state any sort of due process violation during the prison disciplinary proceedings because he fails to allege that any disciplinary sanctions imposed upon him constituted an atypical and significant hardship. In fact, he fails to allege any specifics at all about the disciplinary process, including what disciplinary sanction was imposed, how his due process rights were violated, or really any relevant information, other than his allegation that Defendant denied him the opportunity to present evidence to "fight a charge." Am. Compl. 4.

The Due Process Clause[3] applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged government conduct affects a protected liberty interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty,… or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted). In a case involving prison disciplinary proceedings, an inmate plaintiff "must make a threshold showing that the alleged deprivation imposed amounts to an 'atypical and significant hardship' or that it 'inevitably affect[s] the duration of his sentence.'" *Daniels v. Jarratt*, No. 3:13cv440, 2014 WL 11514222, at *2 (E.D. Va. Jul. 21, 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995) (citing *Puranda v. Johnson*, No. 3:08cv687, 2009 WL 3175629, at *4 (E.D. Va. Sep. 30, 2009) (additional citations omitted)). Therefore, to sustain a claim that he was deprived of a protected liberty interest as an inmate, Farnsworth must

---

[3] The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

allege that the conditions imposed upon him as a result of the disciplinary process constituted an "atypical and significant hardship" compared to the "ordinary incidents of prison life." *McKune v. Lile*, 536 U.S. 24, 37 (2002) (citing *Sandin v.Conner*, 515 U.S. 472 (1995)). This Farnsworth fails to do.

Farnsworth's Amended Complaint utterly fails to include any facts at all that explain what sort of disciplinary sanction was imposed on him. Accordingly, it is impossible for him to state a claim for any sort of due process violation because he has failed to allege that the conditions imposed upon him as a result of the disciplinary process constituted an "atypical and significant hardship" as required by well-established Supreme Court case law.

To the extent Farnsworth is alleging that his ability to earn sentence credits was limited based on his disciplinary charge – as the Amended Complaint seems to allege in Claim #2 – Farnsworth has no constitutional right to earn good time or sentence credits at any particular level. *See, e.g., James v. Robinson*, 45 F.3d 426 (4th Cir. 1994) (affirming district court decisions that found no liberty interest in an inmate's credit earning level).[4] Farnsworth's assignment to Level 4 does not implicate his constitutional rights to due process and his assignment to a lower earning level is not a violation of his right to due process.

---

[4] *See also Washington v. Clarke*, No. 1:12cv1400, 2013 WL 6157877, at *3 (E.D. Va. Nov. 22, 2013) (holding that a habeas "petitioner does not have a liberty interest in receiving earned sentence credits to gain an early release from prison" and that, accordingly, the VDOC "could not have violated his due process rights because the due process clause does not apply"); *Puranda v. Hill*, No. 3:10cv733, 2012 WL 2311844, at *3 (E.D. Va. Jun. 18, 2012) (holding that Virginia "state laws do not create a liberty interest in obtaining a particular classification for earning good conduct time or ESCs against a criminal sentence"); *Sazynski v. Clarke*, No. 2:10cv156, 2011 WL 586973, at *3 (E.D. Va. Feb. 8, 2011) (holding that "it is well established that a Virginia prisoner has no protected liberty interest in a particular ESC classification").

### b. Farnsworth's Claims are Barred

Even if Farnsworth had alleged sufficient facts to show that his due process rights were implicated in the prison disciplinary procedure, any claim for money damages for that violation is barred by the Supreme Court's holdings in *Heck v. Humphrey*, *Wilkinson v. Dotson*, and *Edwards v. Balisok*.[5]

It is well-established that prison disciplinary proceedings which implicate a protected liberty interest generally trigger federal due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). But even assuming – without conceding – that the outcome of his disciplinary hearing implicated a protected liberty interest, Farnsworth "cannot proceed . . . with his § 1983 claims for damages or injunctive relief related to his disciplinary conviction while that conviction stands in effect." *Mukuria v. Mullins*, No. 7:15cv451, 2015 WL 6958343, at *2 (W.D. Va. Nov. 10, 2015) (summarily dismissing an inmate plaintiff's claims pursuant to 42 U.S.C. §1915A after finding such claims were barred pursuant to *Heck* and *Balisock*).

As the Western District of Virginia has recently explained, a "state prisoner's claim for damages related to his criminal conviction is not cognizable under § 1983 where success of the action would implicitly question the validity of plaintiff's criminal conviction or the duration of his confinement, unless plaintiff can demonstrate that the conviction or sentence has been previously invalidated." *Id.* (citing *Heck v. Humphrey*, 513 U.S. 477, 487 (1994)). This rule, initially announced in *Heck*, "also extends to a prisoner's claim for damages related to the loss of earned good time credits as a result of prison disciplinary proceedings." *Id.* (citing *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). Under *Heck* and its progeny:

---

[5] *See Heck v. Humphrey*, 513 U.S. 477 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); and *Edwards v. Balisok*, 520 U.S. 641 (1997).

> 'a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.'

*Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original)). [6]

Here, Farnsworth apparently alleges that he was not able to present the evidence that he wanted to present in his defense and it logically follows that he believes he should not have been convicted of the offense. This alleged defect "would, if established, necessarily imply the invalidity of the deprivation" that presumably accompanied Farnsworth's disciplinary sanction, whatever that was. *Balisok*, 520 U.S. at 646. For that reason, Farnsworth's claims for money damages that "necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id.* at 648.

In *Edwards v. Eads*, the Western District of Virginia summarily dismissed an inmate plaintiff's claims regarding the disciplinary process pursuant to 28 U.S.C. § 1915A(b)(1). *Edwards v. Eads*, No. 7:14cv495, 2015 WL 6511289 (W.D. Va. Oct. 28, 2015). In *Edwards*, the plaintiff claimed that there was insufficient evidence to convict him of the institutional infraction of possessing a weapon, that the hearing officer interrupted the plaintiff as he attempted to

---

[6] Application of the rule announced in *Heck* to prison disciplinary proceedings emphasizes the more general rule that federal courts do not "serve as a reviewing body over the accuracy of disciplinary committees' findings of fact." *Woodard v. Mills*, No. 74-2088, 511 F.2d 1399 (4th Cir. 1975) (per curiam); *accord Carter v. Woods*, 535 F.2d 1249, 1249 (4th Cir. 1976) ("[T]he federal courts do not sit as a reviewing body over the accuracy of disciplinary committees' findings of facts."); *Sullivan v. Bishop*, No. PWG-13-3129, 2014 U.S. Dist. LEXIS 115360, at *17 (D. Md. Aug. 18, 2014) ("Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact."); *Sadler v. Young*, No. 7:04cv580, 2006 U.S. Dist. LEXIS 97890, at *9 (W.D. Va. Apr. 28, 2006) ("Federal courts will not review the accuracy of a disciplinary committee's findings of fact."). And this deferential standard, in turn, comports with the general policy of avoiding "unnecessarily [] perpetuat[ing] the involvement of the federal courts in affairs of prison administration." *Procunier v. Martinez*, 416 U.S. 396, 407 (1974); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).

testify, and that the officer turned off the tape recorder before giving his reasons for a guilty finding. At the hearing, the plaintiff was penalized with the loss of 90 days of good conduct time and was referred to a higher security level prison where he was placed in segregation for 60 days. Though he appealed, the plaintiff's conviction was upheld at two levels of appeal. The *Edwards* court evaluated the plaintiff's claims under *Heck*, *Balisok*, and *Wilkinson* and concluded that the success of the plaintiff's claim would necessarily imply the invalidity of the resulting disciplinary conviction and penalty. Therefore, without evidence that his institutional conviction had been invalidated or overturned through administrative proceedings or a habeas corpus proceeding, the plaintiff's "claims for monetary damages or injunctive relief are barred." *Id.* at *3.

      The facts of *Edwards* and the case at bar are similar. The plaintiff in *Edwards* alleged a lack of sufficient evidence while Farnsworth alleges an inability to present evidence in his defense. Thus Farnsworth's claims that he suffered a denial of due process based on errors in the disciplinary procedure should be dismissed for the same reasons the Court dismissed the plaintiff's claims in *Edwards*. Farnsworth simply cannot sustain a § 1983 action for money damages or injunctive relief based on the prison disciplinary process *unless* he can also show that his disciplinary sentence has been invalidated.[7] Here, Farnsworth has failed to allege any facts whatsoever that even show what the punishment or disciplinary sanction was, much less that his sentence was invalidated. Farnsworth's claims regarding any alleged loss of good time earning level or any disciplinary sanction that may have been imposed are therefore barred and Defendant is entitled to summary judgment on this issue.

---

[7] *See also Pierce v. Freeman*, 121 F.3d 699 (4th Cir. 1997) (affirming dismissal of a § 1983 case in which the plaintiff sought restoration of lost good time credit and money damages based on allegedly unconstitutional procedures used by prison disciplinary officials when they deprived the plaintiff of good time credits).

### B. **Farnsworth's Retaliation Claim Fails**

Without a doubt, it is well-established that prison officials may not retaliate against an inmate for exercising his constitutional rights. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). However, prisoners' claims of retaliation are to be "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). The situation in this case highlights precisely why such skepticism is warranted in claims of retaliation.

To establish a retaliation claim, Farnsworth must show: (1) that he engaged in constitutionally-protected conduct; (2) that the defendant intended to retaliate against him for exercising his constitutional right; (3) that he suffered an adverse action; and (4) that a causal link exists between the protected conduct and the adverse action. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 1960 (2012); *see also Lamp v. Wallace*, No. 3:04cv317, 2005 WL 5303512, at *4 (E.D. Va. Mar. 23, 2005) (*citing Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004)).

Moreover, inmates making a retaliation complaint "must come forward with specific evidence 'establish[ing] that *but for* the retaliatory motive, the complained of incident . . . would not have occurred.'" *Oliver v. Myers*, No. 7:08cv558, 2008 WL 5212409, *2 (W.D. Va. Dec. 12, 2008) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)(emphasis added)). "[I]t is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Wall v. Stevens*, 7:16cv373, 2018 WL 626359, at *6 (W.D. Va. Jan. 30, 2018) (citing *Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 784-86 n.6 (4th

Cir. 1993) (quoting *Huang v. Bd. of Governors of the Univ. of NC*, 902 F.2d 1134, 1140 (4th Cir. 1990)).

Here, Farnsworth's retaliation claim fails to allege specific facts – or any facts, really – establishing that "but for" the alleged retaliatory motive, he would not have been assigned to a lower good time earning level. In fact, the bare bones facts Farnsworth *has* alleged indicate that on August 14, 2017 he was convicted of a disciplinary charge, and that on September 6, 2017 his credit earning level changed. Farnsworth has himself established a "but for" reason for Defendant's alleged decision to change his credit earning level: he was convicted of a disciplinary charge. Farnsworth has done little more than establish a conclusory timeline that indicates he received a disciplinary charge and was then assigned to a lower sentence credit earning level. This is insufficient.

In *Adams v. Rice*, the Fourth Circuit held that in order to establish a retaliation claim, an inmate must "allege how or why defendants retaliated against plaintiff" and may not "conclusorily assert[] that the [conduct complained of] occurred as part of defendants' general scheme or retaliation." *Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994). This is precisely what Farnsworth has done here. He has taken events that occurred sequentially in time, sprinkled in his own unsupported speculation regarding Defendant Ramler's motivations for taking the alleged actions, and concluded without a factual basis that she retaliated against him. Farnsworth has failed to follow the recipe for a retaliation claim and the claim should be dismissed.

### C. **All of Farnsworth's Claims are Barred Because he Failed to Exhaust his Administrative Remedies Before Filing Suit**

Even if Farnsworth's Amended Complaint did include sufficient facts to state a claim against Defendant Ramler, Farnsworth admits that he did not exhaust his administrative remedies

before filing suit in this matter. *See* Am. Compl. 3. Accordingly, his claims should be dismissed without prejudice for failure to fully exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of remedies is mandatory and is required "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–90 (2006). Specifically, the PLRA requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' *before* bringing suit to challenge prison conditions.") (emphasis added).

While exhaustion is typically raised as an affirmative defense, when it is plain from the face of the complaint and Plaintiff's own statements admit that he failed to complete the grievance procedure at his institution before filing his lawsuit, the Court may dismiss the case. *See Eanes v. May*, No. 3:16cv65, 2016 WL 5853740, at *2 (S.D. W. Va. Sep. 16, 2016) (holding that "the fact that exhaustion is an affirmative defense 'does not foreclose in all cases the

11

possibility of a sua sponte dismissal on exhaustion grounds.'" (quoting *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir. 2005)). "In the rare instance when the face of a complaint clearly demonstrates a prisoner's failure to exhaust administrative remedies, sua sponte dismissal on that ground is appropriate." *Id.* (citing *Anderson*, 407 F.3d at 682) (citing *Nasim v. Warden*, 64 F.3d 951 (4th Cir. 1995))); *see also Custis v. Davis*, 851 F.3d 358, 361 (holding that a court "may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies."). Farnsworth alleges that his disciplinary proceedings occurred on August 14, 2017 and that Defendant Ramler retaliated against him on September 6, 2017. Am. Compl. 4. However, he signed his Amended Complaint on September 12, 2017 and filed it on September 20, 2017,[8] just fourteen days after the purported retaliation and a little over a month after the allegedly improper disciplinary hearing. More importantly, Farnsworth plainly admits that as of the time of his submission of his Amended Complaint, he had not yet completed the grievance procedure, and stated that the result of his submitted grievances was "still pending." Am. Compl. 3. In this instance, it is plain from the face of Farnsworth's Amended Complaint that he failed to exhaust his administrative remedies before filing this case and that his Amended Complaint should be dismissed without prejudice for failure to exhaust his administrative remedies.

## D. Defendant is Entitled to Qualified Immunity

To the extent that Farnsworth requests monetary damages against Defendant Ramler in her individual capacity, Ramler is entitled to the defense of qualified immunity because

---

[8] Generally, the "prison mailbox rule" dictates that an inmate's pleading is to be deemed filed on the day he turns it over to the prison mailroom authorities for mailing. *See, e.g., United States v. McNeill*, 523 Fed. App'x 979, 981 (4th Cir. 2013). According to the stamp on Farnsworth's envelope that accompanied his Amended Complaint, the mailroom received his mail on September 20, 2017. *See* Dkt. No. 4-1.

Farnsworth has made no allegations of conduct that would violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "Qualified immunity is an affirmative defense that shields public officers performing discretionary duties from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lovelace v. Lee*, 472 F.3d 174, 196 (4th Cir. 2006) (internal quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they may be held personally liable only for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Qualified immunity involves a two-step inquiry: (1) whether a constitutional or statutory right would have been violated on the alleged facts and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194 (2001). The court has the discretion to proceed directly to the second step of the *Saucier* analysis after assuming without deciding that a constitutional violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

First and foremost, Ramler is entitled to qualified immunity because no constitutional violation occurred. Second, to the extent this Court finds a constitutional violation has occurred, the holdings discussed above demonstrate that Farnsworth had no clearly established right to bring suit against Ramler under the facts he has alleged. Even if the facts can be construed to suggest some sort of constitutional violation, Defendant is entitled to qualified immunity because she did not violate clearly established law as of the time of her actions.

## **Conclusion**

For the reasons outlined above, Farnsworth's Amended Complaint fails to state a claim upon which relief can be granted. Moreover, his claims seeking damages as a result of an

allegedly biased or faulty prison disciplinary hearing are barred. Finally, he clearly alleges that he did not complete the prison's grievance procedure before filing suit in this matter and his claims should be dismissed pursuant to the PLRA. Accordingly, Defendant Ramler respectfully requests this Court grant her Motion to Dismiss.

                                    Respectfully submitted,

                                    LAURA RAMLER

By:          s/Laura Maughan
              Laura Maughan, VSB #87798
              Assistant Attorney General
              Office of the Attorney General
              Criminal Justice & Public Safety Division
              202 North Ninth Street
              Richmond, Virginia 23219
              Phone: (804) 786-0030
              Fax: (804) 786-4239
              Email: lmaughan@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following: N/A.

I also hereby certify that I have sent the document, postage prepaid, to the following non-filing user:

Leo Brandon Farnsworth #1024201
Buckingham Correctional Center
PO Box 340
Dillwyn, Virginia
23926

                                                  s/Laura Maughan
                                                  Laura Maughan, VSB #87798
                                                  Assistant Attorney General